UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PAUL M. SCHNEIDER,

Plaintiff,

v. Case No. 25-CV-1733

STEPHEN MCCULLEN et al.,

Defendants.

---

**ORDER**

---

Plaintiff Paul M. Schneider, who is currently incarcerated at Kettle Moraine Correctional Institution, is representing himself in this 42 U.S.C. § 1983 case. On December 1, 2025, the Court screened the complaint and allowed Plaintiff to proceed on an Eighth Amendment deliberate indifference claim against Defendants Stephen McCullen, Justina M. Hamilton, and Kimberly Sweeney based on allegations that these defendants refused to provide him with his prescribed medication and refused to order refills; a First Amendment retaliation claim against Travis Brady based on allegations that Nurse Brady issued Plaintiff a conduct report for raising concerns about his health care; and a claim against Kristin A. Vasquez and Andrea Billington based on allegations that they turned a blind eye to the misconduct of their subordinates. (ECF No. 4.) The discovery deadline is October 19, 2026, and the dispositive motion deadline is November 18, 2026. (ECF No. 26.) This matter comes before the Court on Plaintiff's motion for leave to file an amended complaint. The amended complaint adds a new claim. The Court will grant Plaintiff's motion, docket the amended complaint as the operative complaint, and screen the amended complaint.

## SCREENING OF THE AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE AMENDED COMPLAINT

In screening a complaint, the Court accepts the allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020) (citation omitted). The Court notes, however, that the allegations in the amended complaint are just that, allegations; they are Plaintiff's version of the events that have purportedly occurred. With this in mind, the Court will summarize Plaintiff's allegations as presented in the amended complaint.

According to Plaintiff, while incarcerated at Racine Correctional Institution, he was prescribed muscle relaxers to be taken as needed, up to four times a day. The medication was staff-controlled. Beginning in November 2021, Plaintiff had problems with his refill requests being provided to his housing unit in a timely manner. As a result, Plaintiff missed doses of his medication because it was unavailable. Licensed Practical Nurse (LPN) Justina Hamilton was responsible for providing medication refills. Plaintiff wrote requests to the Health Services Unit (HSU) in an attempt to have the problem corrected, to ensure timely delivery of his medication, and to avoid exacerbated pain.

On February 23, 2022, LPN Hamilton ordered 120 pills per month, rather than per 30 days, resulting in Plaintiff missing four doses of medication for the months that had 31 days. Plaintiff notified LPN Hamilton that staff accidentally dropped pills, resulting in Plaintiff missing more doses of his medication, but LPN Hamilton did not address the issue. Plaintiff asserts that Nurse Stephen McCullen, LPN Hamilton, and Nurse Kimberly Sweeney withheld his medication. He states that they refused to order refills, resulting in him missing several doses, which led to severe pain and suffering and mental, emotional, and psychological distress.

Plaintiff also submitted grievances in regards to the medical care he received from non-defendants. In response, HSU Manager Kristin Vasquez and Assistant HSU Manager Andrea

Billington met with him in person and notified him that his use of health services requests was excessive and that further complaints would result in punitive consequences.

Plaintiff asserts that, on October 25, 2022, he tried to return outdated medication to HSU in accordance with DAI policy, but LPN Hamilton would not accept them. When LPN Hamilton would not accept the medication, Plaintiff disposed of the medication in the HSU garbage. LPN Hamilton reported Plaintiff to security for disciplinary charges for disposing of the medications in the HSU garbage. Plaintiff spoke with a security supervisor regarding his attempts to return the medication to LPN Hamilton. The security supervisor spoke with LPN Hamilton, who accepted the medication. Plaintiff does not allege that he was subjected to any disciplinary action.

Later that day, LPN Hamilton fabricated a suicidal ideation and documented it in Plaintiff's medical record. Upon observing the suicidal ideation note, Nurse McCullen reported Plaintiff to be seen by the Psychological Services Unit. Plaintiff asserts that LPN Hamilton sought unjustified disciplinary charges and fabricated the suicidal ideation note in retaliation of Plaintiff submitting grievances regarding her conduct.

In November 2022, Plaintiff attempted to obtain his medication. In response to Plaintiff's insistence that he receive his prescribed medication before leaving HSU, Nurse Sweeney threatened Plaintiff with punitive consequences, including calling security and having Plaintiff placed in segregation, if he did not leave HSU. Plaintiff asserts that this threat was in retaliation for Plaintiff's oral grievances about his receipt of medication.

On November 7, 2022, Nurse Travis Brady intercepted Plaintiff's grievance intended for HSU Manager Vasquez. Nurse Brady issued Plaintiff a false conduct report for disrespect, disobeying orders, and disruptive conduct. Plaintiff asserts that Nurse Brady issued the conduct report in response to Plaintiff's grievances regarding medication issues. Later that day, Nurse McCullen informed Plaintiff that he had read Plaintiff's grievance, which was intended for HSU

Manager Vasquez only. Plaintiff asserts that Nurse Brady violated his confidentiality by sharing the grievance with Nurse McCullen.

Also on November 7, 2022, Plaintiff was sent to HSU for treatment. Plaintiff was required to sit for an extensive length of time on a hard, flat bench, which greatly exacerbated Plaintiff's pain. Every other person was called to be seen before Plaintiff, even those who arrived after him. Nurse Sweeney ultimately told Plaintiff that he was called by mistake and would not be seen. Plaintiff asserts that it was no accident that Plaintiff was called to HSU because Nurse Sweeney was performing annual tuberculosis screening and he was due for his screening. Plaintiff's screening was performed on November 11, 2022, by another HSU staff member.

On November 8, 2022, Nurse McCullen engaged in disrespectful and demeaning behavior, including calling Plaintiff "inmate" and "convict" and asking "how are you going to entertain me today?" Nurse McCullen insinuated that Plaintiff was a drug addict. On November 9, 2022, Nurse McCullen exhibited a "very disturbing, vindictive looking grin toward Plaintiff." Plaintiff told Nurse McCullen that he intended to file civil claims over the ongoing retaliation with regard to the latest conduct report Nurse Brady filed and the ongoing harassment from Nurse McCullen. Nurse McCullen responded, "You don't even know, we've got a lot planned for you." Plaintiff believed this conduct meant that further retaliatory actions would be forthcoming. On November 10, 2022, Nurse McCullen berated Plaintiff for "making it to HSU once again" and how Plaintiff "just can't miss a dose." He accused Plaintiff of manipulating the system and knowing quite a bit about medications and how they are intended to be taken. Nurse McCullen asked Plaintiff if he received his little present, meaning Nurse Brady's conduct report. On November 11, 2022, Plaintiff obtained his medication from Nurse McCullen without a single word being exchanged. Upon returning to the housing unit, non-defendant Sergeant Mulman informed Plaintiff that Nurse

McCullen called to issue Plaintiff a warning for disruptive conduct. Nurse McCullen provided no explanation of what behavior was disruptive.

On November 12, 2022, Plaintiff contested the conduct report issued by Nurse Brady with Housing Unit Manager Jordan Johnson. Housing Unit Manager Johnson refused to read the letter Plaintiff wrote to HSU Manager Vasquez regarding his medication problems to see that there was nothing violating policy as Nurse Brady alleged. Housing Unit Manager Johnson found Plaintiff guilty of the conduct report without reviewing any evidence or Plaintiff's defense. He issued Plaintiff ten days of 24-hour room confinement. During room confinement, Housing Unit Manager Johnson refused Plaintiff's requests to attend his housing unit's scheduled library time or extra law library time, thus preventing him from working on the brief he had a court-ordered deadline for, and impeded Plaintiff's right of access to the courts. Plaintiff's meritorious claim was denied as a result of the rushed and inadequate brief Plaintiff submitted. Plaintiff appealed the conduct report to Warden Jason Wells. Warden Wells dismissed the appeal.

Plaintiff submitted a written grievance to Warden Wells regarding his medication issues but received no response. He also submitted a grievance to Warden Wells regarding Nurse McCullen's comments about Plaintiff's complaint against him. This grievance was rubber stamped "received" with no response. Plaintiff also wrote grievances to HSU Manager Vasquez about the ongoing conduct. Assistant HSU Manager Billington provided a short three-sentence response to the numerous issues Plaintiff described but failed to address the gravamen of the complaint.

## ANALYSIS

Plaintiff asserts that Defendants have engaged in a conspiracy. To state a civil conspiracy claim under 42 U.S.C. § 1985, a plaintiff must allege that "an actual conspiracy existed (in other words, that people agreed to injure him), that its purpose was to deprive [the plaintiff] of his

constitutional rights, that an act was committed in furtherance of the conspiracy, and that he was injured." *Alexander v. City of South Bend*, 433 F.3d 550, 556–57 (7th Cir. 2006) (citation omitted). "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden . . . . [A] complaint must contain factual allegations suggesting that the defendants reach a meeting of the minds . . . to deprive [a plaintiff] of his constitutional rights." *Evers v. Reak*, 21 F. App'x 447, 450 (7th Cir. 2002). Plaintiff's conclusory allegations are insufficient to state a conspiracy claim against Defendants.

"[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (internal quotation marks omitted)). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks (1) "whether a plaintiff suffered from an objectively serious medical condition" and (2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)). With this standard in mind, the Court will allow Plaintiff to proceed on a claim that Nurse McCullen, LPN Hamilton, and Nurse Sweeney refused to provide him with his prescribed medication and refused to order refills, resulting in extreme pain and suffering.

Plaintiff does not state a deliberate indifference claim against Nurse Sweeney based on his allegations that she did not see him on November 7, 2022. According to Plaintiff, he was sent to HSU for treatment and he sat for an "extensive length of time" on a hard bench, which exacerbated his pain. Nurse Sweeney ultimately told Plaintiff he was called to HSU by mistake and would not be seen. Plaintiff does not state how long he was sitting on the bench, and the amended complaint does not contain any allegations that Nurse Sweeney knew that Plaintiff was sitting on the bench

waiting to be called or that she knew sitting on the bench would cause Plaintiff pain. At most, Plaintiff alleges that HSU or Nurse Sweeney made a mistake, which does not amount to deliberate indifference. In addition, Plaintiff does not state a claim based on his allegations that Nurse McCullen demeaned him. Most verbal harassment, while unprofessional, does not violate the Constitution. *See Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015).

Plaintiff asserts that Defendants retaliated against him. To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015). The Court will allow Plaintiff to proceed on a First Amendment retaliation claim against Nurse Brady based on allegations that he issued Plaintiff a conduct report because he raised concerns about his health care. Plaintiff also alleges that Nurse McCullen issued him a warning for disruptive conduct, despite providing no explanation of what behavior was disruptive, in retaliation of Plaintiff filing grievances regarding his complaints of harassment and failure to provide medication. Although it is unclear if there was a consequence resulting from this warning, Plaintiff asserts that a warning is considered an aggravating factor when determining punitive consequences and considering security classification. Based on these allegations, the Court will allow Plaintiff to proceed on a retaliation claim against Nurse McCullen.

Plaintiff does not, however, state a retaliation claim against LPN Hamilton, Nurse Sweeney, HSU Manager Vasquez, and Assistant HSU Manager Billington. Plaintiff asserts that HSU Manager Vasquez and Assistant HSU Manager Billington told him that his use of health services requests was excessive and threatened that further complaints would result in punitive consequences. Yet, HSU Manager Vasquez and Assistant HSU Manager Billington merely

informed him of the proper use of the system and the consequences for failing to do so. That did not cause Plaintiff to suffer a deprivation. In addition, Plaintiff's allegations that LPN Hamilton retaliated against him by adding a false note to his medical records and that Nurse Sweeney threatened him with punitive consequences for not leaving the HSU after indicating he would not leave without his medication are too vague to state a retaliation claim. In short, the amended complaint contains no allegations from which the Court can infer that LPN Hamilton, Nurse Sweeney, HSU Manager Vasquez, and Assistant HSU Manager Billington caused Plaintiff to suffer a deprivation that would likely deter First Amendment activity in the future.

Plaintiff may proceed on a claim that HSU Manager Vazquez and Assistant HSU Manager Billington turned a blind eye to the misconduct of their subordinates. He does not state a claim against Warden Wells, however. Plaintiff asserts that he submitted a written grievance to Warden Wells regarding his medication issues but received no response. There is no general supervisory liability under 42 U.S.C. § 1983, *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009), and Plaintiff provides no facts showing that Warden Wells was personally involved in the medication issues he experienced.

Plaintiff also does not state a claim against Housing Unit Manager Johnson, who found Plaintiff guilty of the conduct report and disciplined him with room confinement, or against Warden Wells, who affirmed the decision. Housing Unit Manager Johnson and Warden Wells apparently agreed with Nurse Brady, rather than Plaintiff, which is a proper exercise of their authority. Moreover, Plaintiff, who received notice of the charges in the conduct report and was able to present his version of what happened in a written statement and/or at a disciplinary hearing, received all the process he was due. "Inmates facing only disciplinary action like segregation, rather than disciplinary action affecting the length of their carceral sentence, like a reduction in good-time credit," are entitled to only "informal due process." *Ealy v. Watson*, 109 F.4th 958, 964

(7th Cir. 2024). "[I]nformal due process requires only that an inmate is provided (1) notice of the reasons for the inmate's placement in segregation and (2) an opportunity to present his views, for instance, in a written statement or at a hearing." *Id.* at 966.

In addition, Plaintiff fails to state a Fourteenth Amendment access to the courts claim against Housing Unit Manager Johnson. Prisoners have a "fundamental right of access to the courts." *Lehn v. Holmes*, 364 F.3d 862, 865 (7th Cir. 2004) (citing *Bounds v. Smith*, 430 U.S. 817, 825 (1977); *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). The right to access the courts is not unlimited; the law requires "only meaningful access to the courts." *Id.* at 866 (citation omitted). To state an access to the courts claim, a plaintiff must allege that the defendant's unjustified acts hindered his efforts to pursue a non-frivolous legal claim, resulting in actual injury to the plaintiff. *Id.* Plaintiff alleges that Housing Unit Manager Johnson refused his requests to attend his housing unit's scheduled library time or extra law library time, thus preventing him from working on the brief he had a court-ordered deadline for, and impeded Plaintiff's right of access to the courts. Yet, Plaintiff alleges that he was able to file a brief with the court. Plaintiff's assertion that he felt the brief was rushed and inadequate is too vague to be a cognizable injury. Housing Unit Manager Johnson did not prevent Plaintiff from filing a brief; therefore, he did not deprive Plaintiff of his constitutional right to access to the courts.

Finally, Plaintiff seeks to proceed on a class-of-one equal protection claim. To state a class-of-one claim, a plaintiff must allege that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012) (citation omitted). "[C]lass-of-one claims are generally disfavored in the prison setting, particularly where they involve discretionary decision-making by prison officials." *Conner v. Schwenn*, No. 19-cv-921, 2020 WL 8988685, at *1 (W.D. Wis. Apr. 27, 2020) (citations omitted). The Seventh Circuit has explained that "if class-of-one

claims are not defined appropriately, they might turn many ordinary and inevitable mistakes by government officials into constitutional violations and federal lawsuits." *Geionsky*, 675 F.3d at 747. Plaintiff's class-of-one claim is a repackaged version of his other claims against Defendants. He asserts that Defendants violated the class-of-one Equal Protection Clause of the Fourteenth Amendment by intentionally treating him differently from others similarly situated with no rational basis for the difference in treatment. Aside from this conclusory assertion, Plaintiff has not alleged how Defendants intentionally treated him differently from others similarly situated. Therefore, Plaintiff does not state a class-of-one equal protection claim against Defendants.

## CONCLUSION

The Court finds that Plaintiff may proceed on the following claims: (1) an Eighth Amendment deliberate indifference claim against Nurse McCullen, LPN Hamilton, and Nurse Sweeney based on allegations that they refused to provide Plaintiff with his prescribed medication and refused to order refills, resulting in extreme pain and suffering; (2) a First Amendment retaliation claim against Nurse Brady and Nurse McCullen based on allegations that Nurse Brady issued him a conduct report and Nurse McCullen issued a fabricated warning of disruptive conduct because he raised concerns about his health care; and (3) a claim that HSU Manager Vazquez and Assistant HSU Manager Billington turned a blind eye to the misconduct of their subordinates.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to file an amended complaint (ECF No. 27) is **GRANTED**. The clerk's office is directed to detach and e-file Plaintiff's amended complaint (ECF No. 27-1) as the operative complaint.

**IT IS FURTHER ORDERED** that Defendants' motion to stay the answer deadline and for screening of Plaintiff's complaint (ECF No. 28) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Housing Unit Manager Jordan Johnson and Warden Jason Wells are **TERMINATED** as defendants.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Nurse McCullen, LPN Hamilton, Nurse Sweeney, Nurse Brady, HSU Manager Vazquez, and Assistant HSU Manager Billington shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

Dated at Green Bay, Wisconsin on September 15, 2026.

s/ *Byron B. Conway*
BYRON B. CONWAY
United States District Judge